IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALLIE JAMES BELL,

    Petitioner,

vs.

LARRY SMALL, Warden,

    Respondent.

No. CIV S-09-0515 MCE CHS P

FINDINGS AND RECOMMENDATIONS

I. <u>INTRODUCTION</u>

    Petitioner Allie Bell is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Bell attacks his conviction in the Solano County Superior Court, case number FC173680, for first degree murder with special circumstances and attempted robbery.

II. <u>CLAIMS</u>

    Bell claims that:

    A.    A pretrial identification procedure was unduly suggestive;

    B.    The trial court violated his right to confrontation;

    C.    The trial court erred in instructing the jury; and

    D.    His conviction was the result of cumulative error.

1

Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's petition for habeas corpus relief be denied.

III. FACTUAL AND PROCEDURAL BACKGROUND

A. Facts[1]

> Levar Craft was killed by gunshot wounds to his back and the back of his head on February 6, 1999, at about 9:30 p.m.[FN] Craft's girlfriend, Angela Dossman, told police that a man she knew only as "Jimmy" shot Craft while trying to rob him
>
>> FN. Police collected casings and bullets at the scene and from Craft's car and person, which were determined to be from a .32 caliber semi-automatic gun that was never located.
>
> Dossman testified that she and Craft were in Craft's car when Craft's phone and pager went off. Craft drove to Dover Villa where he said he was going to meet his cousin. When they arrived, one of two men standing outside got into the rear seat of Craft's car. Dossman heard Craft tell the man that he did not have what the man wanted. When the man in the back seat opened the door to exit the car, the interior light went on, and Dossman looked at the man and recognized him as "Jimmy."[FN] She identified defendant as that man.
>
>> FN. Dossman had seen Jimmy at her sister's house, around Dover Villa, and at her own house a few days earlier. She had known him for three or four years, but did not know his last name when she first spoke to police.
>
> As defendant got out of the car, he told Craft, "Break yourself. Give me everything you got," and pointed a gun at Craft's head. Craft replied, "You don't have to do this. You can have everything." As Craft stepped out of the car, several shots were fired. Dossman panicked, moved into the driver seat, and drove away. She heard more gunfire, as Craft lay on the street.
>
> Dossman flagged down a patrol car that was responding to a call regarding a shooting at Villa Circle. Hysterical and crying, she told the officer that her boyfriend was just shot by a man named "Jimmy." Dossman described Jimmy as dark-skinned, skinny, with short hair. Later that night, Dossman was shown three photographic lineups at the police station, but made no

---

[1] This statement of facts is taken from the September 19, 2007, opinion by the California Court of Appeal for the First Appellate District (hereinafter Opinion), filed with respondent's answer as Exhibit H. These facts have not been rebutted with clear and convincing evidence and therefore are presumed correct. 28 U.S.C. § 2254(e)(1); Taylor v. Maddox, 336 F.3d 992, 1000 (9th Cir. 2004).

2

identifications. A couple of days later she was shown a fourth array that included defendant's photo and she immediately identified him. Dossman testified that she had no doubt that defendant was the one who killed Craft.

David Welch heard from his stepson that there was shooting out in the street. He also heard shots, and came out of his nearby condominium. Welch saw an African-American man pointing a gun at the street, where a body was lying on the ground. The man seemed to look at Welch, turned, and ran away. Welch described the man to police, and told them he could identify him if he saw him again.[FN] Welch later identified defendant as the gunman at a live lineup, and in court. On defense counsel's motion, Welch was shown a six-person live lineup approximately 17 months after the shooting, and identified defendant as the gunman, after recognizing his left profile. After the lineup, Welch said that on a scale of one-to-ten, his certainty about the identification was a nine. During the first trial, he said he was "80 percent sure."

> FN. Welch described the gunman as an African-American male, about 18 or 19 years old, six feet tall, 150 pounds, of dark complexion, with a slim build.

Defendant was arrested in San Bernardino in March 2000, approximately a year after the killing, when he was stopped for walking with an open container of alcohol. He first gave police two false names and birth dates. But after he identified himself he heard the police dispatcher say, "Subject Allie James Bell is wanted for PC 187, warrant out of county." Defendant told the arresting officer, "That's not my name. That's my cousin's name. I lied to you again." Defendant also signed a false name on one of the booking forms. Defendant was convicted of murder and attempted robbery but the convictions were reversed on appeal due to instructional error. (People v. Bell (2004) 118 Cal.App.4th 249.)

On retrial, defendant moved unsuccessfully to exclude Welch's identification testimony. He also attempted to discredit the testimony of eyewitnesses Welch and Dossman, and elicited testimony on cross-examination regarding their prior convictions. Welch had a conviction for child abuse, and Dossman, a conviction for prostitution.[FN] Defendant presented expert testimony regarding the unreliability of eyewitness testimony. Defendant also called his cousin's brother, Johnny Harper, as an alibi witness who testified defendant was in San Bernardino on Harper's birthday, March 18, 1999, but Harper did not know if defendant was in San Bernardino on February 6, 1999, the night Craft was killed. Defendant produced the testimony of a 12-year-old girl who gave conflicting reports on whether she told police that she saw someone other than the gunman. Another neighbor, who was a friend of defendant's, testified that he saw Craft argue with a man early in the morning on the day of the shooting, and he

3

>last saw defendant three or four weeks before the shooting.
>>FN. Dossman also admitted that she gave a false name to police in 1994 and again in December 2004.
>
>The jury convicted defendant of first degree murder with special circumstances, and attempted robbery.[FN] The jury found true the allegations that defendant personally used a firearm. Defendant was sentenced to a term of life in prison without possibility of parole, plus a 10-year enhancement for personal use of a firearm. The sentence on the attempted robbery conviction was stayed.

Opinion at 1-4.

    B.    <u>Post Trial Proceedings</u>

Bell appealed his conviction to the California Court of Appeal, First Appellate District. Answer, Exhibit E. That appeal was denied in a reasoned opinion on September 19, 2007. Answer, Ex. H.

On October 30, 2007, Bell petitioned the California Supreme Court for review. Answer, Ex. I. That petition was summarily denied on November 28, 2007. Answer, Ex. J. Bell filed this federal petition on February 23, 2009.

IV.    <u>APPLICABLE STANDARD OF HABEAS CORPUS REVIEW</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

/////

4

Although "AEDPA does not require a federal habeas court to adopt any one methodology," Lockyer v. Andrade, 538 U.S 63, 71 (2003), there are certain principles which guide its application.

First, the "contrary to" and "unreasonable application" clauses are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

/////

Bell v. Cone, 535 U.S. 685, 694 (2002). It is the habeas petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002). It is appropriate to look to lower court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).

Second, the court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). So long as the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief. Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).

Third, in determining whether a state court decision is entitled to deference, it is not necessary for the state court to cite or even be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2003). Moreover, a state court opinion need not contain "a formulary

5

statement" of federal law, so long as the fair import of its conclusion is consonant with federal law.  Id.

## V.     DISCUSSION OF PETITIONER'S CLAIMS

### A.     Unduly Suggestive Lineup

#### 1)     Description of Claim

Prior to the first trial Bell's attorney requested that witness David Welch attempt to identify Bell at an in-person lineup.  Petition at 34.  At that lineup Welch identified Bell as the shooter.  Reporter's Transcripts ("RT") at 65-66.  On cross-examination Welch testified that Bell's skin tone was much darker than any of the other men in the lineup.  Id. at 81.

Bell claims that the other five men in the lineup were "four light-skinned blacks" and "one medium-skinned black."  Petition at 38.  Bell's attorney described him as "one of the darkest African-Americans I've ever seen."  Id.  Bell argues that because the other participants in the lineup "were not anywhere near his color" the lineup was unduly suggestive.  Id. at 39.

#### 2)     State Court Opinion

The California Court of Appeal rejected this claim stating:

> Defendant has not shown that the trial court's ruling was erroneous, or that his dark complexion in itself rendered the lineup unduly suggestive . . . .
>
> "Because human beings do not look exactly alike, differences are inevitable.  The question is whether anything caused defendant to 'stand out' from the others in a way that would suggest the witness should select him." (People v. Carpenter (1997) 15 Cal.4th 312, 367; see also People v. Johnson (1992) 3 Cal.4th 1183, 1217.)  The circumstances here indicate that Welch selected defendant at the lineup based on his profile, not his complexion, and the lineup was not unduly suggestive . . . .[FN]
>
> Review of the photographs of the lineup also supports the trial court's conclusion that the lineup was not unduly suggestive.  "Accordingly, we need not go on ... to determine whether the identification itself was nevertheless reliable under the totality of the circumstances." [FN] (Johnson, supra, at p. 1218; see also People v. Ochoa, supra, 19 Cal.4th at p. 412.)

6

> FN. Defendant cites United States v. Wade (1967) 388 U.S. 218 and argues "the other participants in [defendant's] lineup were 'grossly dissimilar in appearance' to him." In that case, the court decided that the absence of defense counsel during a pretrial lineup violated the Sixth Amendment. The court referred to various instances of suggestive procedures mentioned in state reports. (Id. at pp. 232-233, 236-237.) But the state cases cited in Wade do not support defendant's argument and are factually dissimilar.
>
> FN. But even assuming the lineup here were to be found unduly suggestive, we disagree with defendant that the resulting identification was unreliable when considered with respect to the factors identified in Neil v. Biggers, including "the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (Neil v. Biggers, supra, 409 U.S. at pp. 199-200.)
>
> Defendant had an opportunity to attempt to cross-examine Welch, to argue to the jury that his identification was not worthy of credence, and to present expert testimony on the vagaries of eyewitness identification, and the trial court did not err when it denied defendant's motion to exclude Welch's eyewitness identification. (See People v. Brandon, supra, 32 Cal.App.4th at p. 1052 ["Based on the totality of the circumstances, we conclude [defendant] has not met his burden of proving the ... lineup was unfair and unduly suggestive"].)

Opinion at 9-10.

### 3) Applicable Law

The Due Process Clause of the United States Constitution prohibits the use of identification procedures which are "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 302 (1967), overruled on other grounds by Griffith v. Kentucky, 479 U.S. 314, 326 (1987) (discussing retroactivity of rules propounded by Supreme Court). A suggestive identification violates due process if it was unnecessary or "gratuitous" under the circumstances. Neil v. Biggers, 409 U.S. 188, 198 (1972). See also United States v. Love, 746 F.2d 477, 478 (9th Cir. 1984) (articulating a two-step

process in determining the constitutionality of pretrial identification procedures: first, whether the procedures used were impermissibly suggestive and, if so, whether the identification was nonetheless reliable). An identification procedure is suggestive where it "[i]n effect ... sa[ys] to the witness 'This is the man.' " Foster v. California, 394 U.S. 440, 443 (1969). Each case must be considered on its own facts and whether due process has been violated depends on "the totality of the circumstances' surrounding the confrontation." Simmons v. United States, 390 U.S. 377, 383 (1968). See also Stovall, 388 U.S. at 302.

    4)    Discussion

In order to determine the admissibility of identification testimony, courts employ a two-step analysis. Love, 746 F.2d at 478. The first step focuses on whether the identification procedure was impermissibly suggestive. Id. (citing Manson v. Brathwaite, 432 U.S. 98, 107 (1977), and Biggers, 409 U.S. at 199-200). Here, Bell argues that the Welch lineup was impermissibly suggestive because his complexion was darker than any other lineup participant.

The Ninth Circuit has consistently declined to hold that minor differences between suspects' photographs render a lineup impermissibly suggestive. In Mitchell v. Goldsmith, 878 F.2d 319, 323 (9th Cir. 1989), the Ninth Circuit rejected a habeas petitioner's claim that pretrial identification procedures were unduly suggestive where he was "the only person in the lineup who was photographed against a blue background; four of the seven individuals in the photographic lineup had lighter complexions than his; and [his] photo was the only photo with a 1981 date." Likewise, in United States v. Collins, 559 F.2d 561, 563 (9th Cir. 1977), the court rejected the same argument where the appellant claimed that "(1) three of the six Negro male individuals depicted appeared to be significantly younger than defendant; (2) only defendant and two others appear to have afro-style haircuts; and (3) only defendant appears to have a beard." See also United States v. Burdeau, 168 F.3d 352, 357 (9th Cir. 1999) (photo array not suggestive where appellant's picture "was placed in the center of the array, was darker than the rest, and was the only one in which the eyes were closed," and citing cases for

proposition that "such insubstantial differences ... do not in themselves create an impermissible suggestion that the defendant is the offender.")

The police officer who constructed the lineup testified that the participants were "appropriate in terms of height, weight, hair, and facial hair." Opinion at 6. Bell's petition concedes that all six lineup participants were African-American males. Petition at 38. Bell does not claim that the features of the other five participants were significantly different from his own in any respect other than skin tone.

Welch testified that his identification of Bell was based on viewing him from the left profile because of Bell's "facial features" which he described as "distinctive." RT at 65. Welch also testified at Bell's first trial that on a scale of ten he would quantify his certainty in his identification as a nine. Reporter's Transcript of 2001 Trial ("RT 2001") at 190. The only reason Welch did not place his certainty at ten was because "obviously the person. . . [he] picked out was not wearing the same clothing at the time." Id. at 190. Welch's identification was not based on Bell's skin tone.

If the flaws in the pretrial identification procedures are not so suggestive as to violate due process, "the reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury." Foster, 394 U.S. at 443 n. 2. See also Manson v. Brathwaite, 432 U.S. 98, 116 (1977) ("[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature").

The difference between the skin tone of Bell and the other lineup participants was a minor difference that did not render the lineup impermissibly suggestive, and its reliability was therefore a matter for the jury to decide. Further, the lineup was done at the request of and before defense counsel. Opinion at 5; RT 2001 at 12-13. The defense investigator even helped arrange the six participants. Id. While defense counsel expressed some concern about the issue of skin tone, he allowed the lineup to proceed. RT 2001 at 10.

1  The state court's rejection of this claim was neither contrary to, nor an
2  unreasonable application of, clearly established federal law and Bell is not entitled to relief on
3  this claim.

4      B.    <u>Right to Confrontation</u>

5          1)    <u>Description of Claim</u>

6  After Bell's first trial, Welch was convicted of misdemeanor corporal punishment
7  on a child. RT at 19. Welch apparently duct taped his seven-year-old son to a stool and struck
8  him with a hanger. <u>Id.</u>

9  At the second trial, the judge limited the cross examination of Welch to questions
10 concerning "just the conduct of striking with the coat hanger." RT at 387. No mention of the
11 duct tape was allowed. <u>Id.</u>

12 Bell argues that by limiting the questioning the trial court violated his right to
13 confront and impeach Welch. Petition at 43, 51.

14         2)    <u>State Court Opinion</u>

15 The California Court of Appeal rejected this claim stating:

> The court here allowed defendant to inquire about Welch's conduct when he hit his child with a hanger, and injured him. Defendant has not shown it was an abuse of discretion to exclude other details of the incident on the basis that they would unduly inflame the jury, and were substantially more prejudicial than probative of Welch's veracity. (See <u>Delaware v. Van Arsdall</u> (1986) 475 U.S. 673, 679-680 ["trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination"]; <u>People v. Crittenden</u> (1994) 9 Cal.4th 83, 134 ["We have described the 'prejudice' referred to in Evidence Code section 352 as characterizing evidence that uniquely tends to evoke an emotional bias against a party as an individual, while having only slight probative value"]; <u>People v. Branch</u> (2001) 91 Cal.App.4th 274, 286 [" 'evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction' "]; see also <u>People v. Chatman</u> (2006) 38 Cal.4th 344, 373 [" 'courts may and should consider with particular care whether the admission of [impeachment evidence

10

> other than felony convictions] might involve undue time, confusion, or prejudice which outweighs its probative value' "].) Defendant has not shown that the court's evidentiary ruling was "arbitrary, whimsical, or capricious as a matter of law." (People v. Linkenauger (1995) 32 Cal.App.4th 1603, 1614.)

Opinion at 11-12.

### 3)   Applicable Law

The Sixth Amendment's Confrontation Clause is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Hernandez v. Small, 282 F.3d 1132, 1137 n. 3 (9th Cir. 2002) (citation omitted). A primary interest secured by the Confrontation Clause of the Sixth Amendment is the right of an accused in a criminal prosecution to cross-examine witnesses against him or her. See Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986); Davis v. Alaska, 415 U.S. 308, 315 (1974). The Confrontation Clause of the Sixth Amendment "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in original). It does not deprive "trial judges ... [of] wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679. The Confrontation Clause is not violated by the exclusion of evidence when, "the jury is otherwise in possession of sufficient information upon which to make a discriminating appraisal of the subject matter at issue. When the refused cross-examination relates to impeachment evidence, we look to see whether the jury had sufficient information to appraise the bias and motives of the witness." Skinner v. Cardwell, 564 F.2d 1381, 1388-89 (9th Cir. 1977), cert. denied, 435 U.S. 1009 (1978).

Confrontation Clause violations are subject to harmless error analysis. Holley v. Yarborough, 568 F.3d 1091, 1100 (9th Cir. 2009); Whelchel v. Washington, 232 F.3d 1197, 1205-06 (9th Cir. 2000). "In the context of habeas petitions, the standard of review is whether a

11

1  given error 'had substantial and injurious effect or influence in determining the jury's verdict.' "

2  Christian v. Rhode, 41 F.3d 461, 468 (9th Cir. 1994) (quoting Brecht v. Abrahamson, 507 U.S.

3  619, 637 (1993)).  Factors to be considered when assessing the harmlessness of a Confrontation

4  Clause violation include the importance of the testimony, whether the testimony was cumulative,

5  the presence or absence of evidence corroborating or contradicting the testimony, the extent of

6  cross-examination permitted, and the overall strength of the prosecution's case.  Van Arsdall,

7  475 U.S. at 684.

8  /////

        4)     Discussion

Bell argues that the omitted facts of the conviction were crucial to the jury's ability to evaluate Welch's credibility.  Petition at 50.  The extent of the cross-examination permitted however, was considerable.  The only fact excluded from Welch's cross-examination was that he duct taped his child prior to striking him.

> Q: On February 28, 2003, you had the occasion to take your seven-year-old stepson bent over a stool and whip him with a coat hanger, didn't you?
> A: Not my stepson.  I spanked my son.
>
> Q: Your son?
> A: Yes, I spanked my son.
>
> Q: Michael, right?
> A: Aaron.
>
> Q: His name is not Michael, okay, I'm sorry.
> A: His name is not Michael.
>
> Q: I thought it was Michael, and you whipped him with a coat hanger, right?
> A: Yes, I spanked him with a coat hanger, yes, I did.
>
> Q: Spanked him hard enough to leave marks across his butt, right?
> A: Yes, I did.
>
> Q: And his thighs?
> A: No, sir, just his buttocks.
>
> Q: Then you were charged and convicted of a crime, right?

```
               A: I was charged with it, and I pled guilty to a misdemeanor, yes, I
                  did.
/////
```

RT at 563.

For the jury to evaluate Welch's credibility it was important that they were aware that he was convicted of a crime arising from the striking of his son with a coat hanger. The additional fact that his son was duct taped while he was struck adds little to the jury's evaluation. Further, Welch's prior bad act does not alter the considerable strength of the prosecution's case.

Bell was identified as the shooter by two eye witnesses, Dossman and Welch. One of those witnesses, Dossman, had known Bell for three or four years before the commitment offense, and he had been at her home just a few days prior. Opinion at 2; RT at 130. Dossman identified Bell from a photo lineup and expressed no doubt in her mind that he was the killer. RT at 158, 164.

Given the extensive cross-examination permitted and the overall strength of the prosecution's case any error in restricting the questioning would have been harmless. The state court's rejection of this claim was therefore neither contrary to, nor an unreasonable application of, clearly established federal law and Bell is not entitled to relief.

    C.    <u>Jury Instruction Error</u>

        1)    <u>Description of Claim</u>

On March 22, 2000, Bell was detained by Deputy Perez of the San Bernardino County Sheriffs Department for possession of an open container of alcohol. RT at 313-14. When asked for his name Bell gave two different fictitious names. <u>Id.</u> at 316-19.

At Bell's retrial the judge instructed the jury in the language of CALJIC No. 2.03 (Consciousness fo Guilt-Falsehood) as follows:

> If you find that before this trial the defendant made a wilfully false or deliberately misleading statement concerning the crime for which he is now being tried, you may consider that statement as a circumstance tending to prove a consciousness of guilt. However, that conduct is not sufficient by itself to prove guilt, and its weight

13

and significance, if any, are for you to decide.

Clerk's Transcripts ("CT") at 217. This instruction was given over the objection of Bell's defense counsel. RT at 1068.

Bell does not dispute that he made the false statements but argues that the statements show a consciousness of guilt for the possession of an open container, not for the murder. Petition at 53. He argues that given the "paucity of evidence" of his guilt, this instruction allowed the jury to consider his false statements as evidence of guilt and unfairly undermined his defense. Id. at 53-54.

### 2) State Court Opinion

The California Court of Appeal rejected this claim in a footnote, stating:

> In his opening brief, defendant also argues that the court erred when it instructed the jury that it could consider the false identification he provided police when they arrested him as tending to show consciousness of guilt, and that the cumulative errors in this case require reversal. He does not renew those arguments in his reply brief, nor do we find them meritorious.

/////

Opinion at 12 n. 20.

### 3) Applicable Law

A challenge to jury instructions does not generally state a federal constitutional claim. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); See also Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under Brecht v. Abrahamson, 507 U.S.

14

619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome. See Sarausad v. Porter, 479 F.3d 671, 692 (9th Cir. 2007); Thomas v. Hubbard, 273 F.3d 1164, 1179 (9th Cir. 2001), overruled on other grounds by Payton v. Woodford, 299 F.3d 815, 828 n.11 (9th Cir. 2002).

          4)       Discussion

The Ninth Circuit has observed, "[s]o long as [a consciousness of guilt] instruction does not state that inconsistent statements constitute evidence of guilt, but merely states that the jury may consider them as indicating a consciousness of guilt, the instruction would not violate constitutional rights." Turner v. Marshall, 63 F.3d 807, 820 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999).

CALJIC No. 2.03 provides that "such conduct is not sufficient by itself to prove guilt, and its weight and significance ... are matters for [the jury's] consideration." Therefore, because CALJIC No. 2.03 merely allowed the jury to consider the statements as consciousness of guilt, and did not state that the statements alone constituted evidence of guilt, the instruction did not violate Bell's constitutional rights. Further, any error in allowing the jury to consider Bell's statements as consciousness of guilty would not have had a substantial and injurious effect on the outcome of the trial given the eyewitness testimony of Dossman and Welch.

The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law and Bell is not entitled to relief on this claim.

    D.      Cumulative Error

          1)       Description of Claim

Bell argues that the combined effect of the previously discussed errors violated his right to a fair trial, even if taken separately no single error resulted in prejudice. Petition at 113-14.

/////

Case 2:09-cv-00515-MCE-CHS   Document 19   Filed 10/08/09   Page 16 of 17

       2)     <u>State Court Opinion</u>

As noted previously the California Court of Appeal rejected this claim in a footnote.  <u>See</u> <u>Supra</u> at 14, lines 11-14.

       3)     Applicable Law And Discussion

In cases where there are a number of trial errors, the court may look at "the overall effect of all the errors in the context of the evidence introduced at trial against the defendant." <u>United States v. Frederick</u>, 78 F.3d 1370, 1381 (9th Cir. 1996) (quoting <u>United States v. Wallace</u>, 848 F.2d 1464, 1476 (9th Cir. 1988)).  "In other words, 'errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.' " <u>Alcala v. Woodford</u>, 334 F.3d 862, 883 (9th Cir. 2003) (quoting <u>Thomas v. Hubbard</u>, 273 F.3d 1164, 1180 (9th Cir. 2001)).

However, "where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation." <u>Fuller v. Roe</u>, 182 F.3d 699, 704 (9th Cir. 1999), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000).  Here there was no single error committed and therefore there was no cumulative error.

The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law and Bell is not entitled to relief on this claim.

## VI. <u>CONCLUSION</u>

Accordingly, IT IS RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned


1  "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections
2  shall be served and filed within ten days after service of the objections. The parties are advised
3  that failure to file objections within the specified time may waive the right to appeal the District
4  Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5  DATED: October 8, 2009

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE